IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00149-MR

| | |
|---|---|
| TERRANCE J. TRENT,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>)<br>RONNIE LANE HUNEYCUTT,  )<br>et al.,  )<br>)<br>Defendants.  )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 28].

**I.  PROCEDURAL BACKGROUND**

On October 13, 2022, Pro Se Plaintiff Terrance J. Trent ("Plaintiff") filed this action pursuant to 42 U.S.C. § 1983 for the violation of his civil rights while incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina. [Docs. 1, 1-1]. Plaintiff's unverified Complaint,[1] in which he named (1) Ronnie Lane Huneycutt, identified as the Warden at

---

[1] Plaintiff submitted a document captioned "Affidavit/Complaint" with his Complaint, but it is not sworn or otherwise submitted under penalty of perjury. [See Doc. 1-1]. The Court, therefore, considers Plaintiff's Complaint unverified in its entirety.

Alexander; (2) Chris Biecker, identified as the Unit Manager at Alexander; (3) Jerry Laws, identified as a Disciplinary Hearing Officer (DHO) at Alexander; (4) Troy A. Morrison, identified as a Correctional Officer at Alexander; (5) Kenneth Poteat, identified as a Unit Manager at Alexander; and (6) Jeffrey Duncan, not otherwise identified, survived initial review on Plaintiff's First Amendment retaliation claim against all Defendants and Plaintiff's Fourteenth Amendment due process claims Defendants Laws and Huneycutt. [Id., Doc. 8]. Plaintiff's other claims were dismissed on initial review. [Doc. 8 at 21-22].

Plaintiff alleges generally that Defendants retaliated against Plaintiff after he attempted to grieve the loss of his tablet privileges and/or after Plaintiff filed a lawsuit against another prison official for an alleged May 6, 2021 assault;[2] that Defendant Biecker retaliated against Plaintiff by conspiring with Defendants Laws and Morrison to bring "severe charges" against Plaintiff and Defendants Biecker and Laws approved them without investigation; Defendant Laws failed to properly conduct the related disciplinary hearing and found Plaintiff guilty, although the charges were dismissed on Plaintiff's appeal; and Defendant Huneycutt was aware of these constitutional violations and did nothing. [Docs. 1, 1-1].

---

[2] See Doc. 8 at n.1 (discussing Plaintiff's Complaint in Case No. 5:22-cv-00014-MR).

2

On March 19, 2024, Defendants moved for summary judgment. [Doc. 28]. Defendants argue that summary judgment should be granted because they did not violate Plaintiff's First Amendment right to be free from retaliation or Plaintiff's Fourteenth Amendment right to due process. [Doc. 29]. In support of their summary judgment motion, Defendants submitted a brief; their own affidavits; the Affidavits of Monica Bond, Amy Jenkins, and Justin Poarch; and various investigation, disciplinary, and other prison records. [Docs. 29, 30, and 30-1 through 30-31].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 31]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not file a response to Defendants' summary judgment motion. Also, as noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendants' is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

4

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence

5

from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).

## III. FACTUAL BACKGROUND

Defendants' uncontroverted forecast of evidence shows the following.

Plaintiff is currently serving a sentence of 192 months for convictions of First-Degree Kidnapping and Robbery with a Dangerous Weapon. [Doc. 30-24 at ¶ 5: Huneycutt Aff.]. At the relevant times, Defendant Huneycutt was the Warden at Alexander, Defendant Duncan was an Associate Warden at Alexander, Defendants Biecker and Poteat were Unit Managers at Alexander, Defendant Morrison was a Facility Intelligence Officer (FIO) at Alexander, and Defendant Laws was a DHO for the North Carolina Department of Adult Corrections (NCDAC). [Doc. 30-24 at ¶ 2: Huneycut Aff.; Doc. 30-25 at ¶ 2: Biecker Aff.; Doc. 30-27 at ¶ 2: Poteat Aff.; Doc. 30-

28 at ¶ 2: Morrison Aff.; Doc. 30-1 at ¶ 2: Laws Aff.].

As FIO, Defendant Morrison's duties included monitoring and managing drug and gang activity within the facility to identify potential threats. [Doc. 30-28 at ¶¶ 5-6]. Defendant Morrison learned through investigative means that, on February 25, 2022, Plaintiff and five other offenders were participating in gang activity and attempting to introduce drugs into the facility. [Doc. 30-28 at ¶ 10; Doc. 30-2]. Defendant Morrison prepared a witness statement detailing the results of his investigation and submitted Class A charges of Attempted Drug Introduction and Gang Activity against all six offenders, including Plaintiff, to Sergeant Poarch. [Doc. 30-28 at ¶¶ 10-12; see Doc. 30-5]. Sergeant Poarch reviewed the witness statement, prepared a disciplinary packet, and, on March 3, 2022, provided Plaintiff with his notice of rights ("Notice to Offender") and the opportunity to provide a witness statement. [Doc. 30-28 at ¶¶ 12-13; Doc. 30-2; Doc. 30-4]. When Plaintiff signed the Notice to Offender, acknowledging that he received the notice and understood his rights, he dated it February 25, 2022, instead of the day he received it, March 3, 2022. [Doc. 30-2]. Although such misdating is "a commonly used trick … by inmates to get disciplinaries dismissed because of the appearance of a rights violation," Sergeant Poarch did not notice that Plaintiff misdated the Notice to Offender. [Doc. 30-28 at

7

¶ 15; Doc. 30-1 at ¶ 26; Doc. 30-31 at ¶ 20; Doc. 30-24 at ¶ 11]. The completed disciplinary packet was reviewed and approved by Defendant Biecker. [Doc. 30-31 at ¶ 15]. Defendant Biecker, as Unit Manager, however, had no authority to charge, review evidence, or find inmates guilty of Class A offenses. [Doc. 30-25 at ¶¶ 7, 15]. Class A offenses rather must by reviewed by a DHO after the initial investigation. [Doc. 30-25 at ¶ 7, Doc. 30-28 at ¶ 16; see Doc. 30-1 at ¶ 3]. Therefore, Plaintiff's disciplinary packet was sent to Defendant Laws after it was approved by Defendant Biecker. [Doc. 30-31 at ¶ 15; Doc. 30-28 at ¶ 16].

Defendant Laws in turn reviewed the disciplinary packet, found sufficient evidence to charge Plaintiff, and conducted a disciplinary hearing. [Doc. 30-28 at ¶ 16; see Doc. 30-1 at ¶ 3]. Defendant Laws conducted Plaintiff's disciplinary hearing on March 8, 2022. [Doc. 30-1 at ¶ 11]. Plaintiff pleaded not guilty to the charges. [Doc. 30-1 at ¶ 12]. On his Witness Statement, Plaintiff requested live witnesses to be present and physical evidence to be reviewed, but he failed to list the names of such witnesses or state what evidence he wanted considered at the hearing. [Doc. 30-4; Doc. 30-1 at ¶ 14]. As such, no witnesses were called and no evidence from Plaintiff was reviewed. [Doc. 30-1 at ¶¶ 14-15]. On Plaintiff's request, a staff member, Rena Deal, was present during the hearing to assist Plaintiff. [Doc.

8

30-1 at ¶ 17]. After reviewing all the materials before him, Defendant Laws found Plaintiff guilty on both charges and, pursuant to policy, as punishment, took 120 days of Plaintiff's good time, 60 days for each offense. [Doc. 30-1 at ¶¶ 18, 22; Doc. 30-30 at ¶¶ 5-6: Jenkins Aff.; Doc. 30-7]. Defendant Laws did not discuss Plaintiff's disciplinary package with Defendant Biecker or any other staff member before or after the disciplinary hearing. [Doc. 30-1 at ¶ 21].

Plaintiff appealed. [Doc. 30-30 at ¶ 7]. NCDAC Chief Disciplinary Hearing Officer Monica Bond reviewed Plaintiff's appeal. [Doc. 30-29 at ¶ 7]. On April 10, 2022, Bond decided to dismiss Plaintiff's disciplinary charges because he created an apparent "timeframe violation" by dating the Notice to Offender for a date before the charges were assigned and accepted. [Doc. 30-29 at ¶ 8; see Doc. 30-25 at ¶ 20, Doc. 30-26 at ¶¶ 16, 19, Doc. 30-28 at ¶ 20, Doc. 30-24 at ¶¶ 13-14]. The decision to dismiss the charges was not based on a finding that Petitioner was not guilty of them. [Doc. 30-29 at ¶ 9; Doc. 30-24 at ¶ 14]. To be sure, had Sergeant Poarch noticed Plaintiff's misdating the Notice to Offender in the first place, Plaintiff's guilty verdict would have been upheld on appeal. [Doc. 30-28 at ¶ 21].

Due to a data entry error, the appeal decision was recorded as "upheld" rather than "dismissed." [Doc. 30-29 at ¶ 15]. On July 14, 2022, Bond

9

realized her mistake and worked to correct the disposition of the appeal in the NCDAC's recordkeeping system. [Doc. 30-29 at ¶¶ 15-16]. The disposition was corrected the next day and 120 good time days were restored to Plaintiff. [Doc. 30-29 at ¶ 17; Doc. 30-30 at ¶ 8]. Plaintiff was notified shortly thereafter that his appeal had been successful and that the sanctions had been dismissed. [See Doc. 30-29 at ¶ 18].

Regarding the earlier May 6, 2021 incident, Defendant Poteat was not aware of the lawsuit Plaintiff filed based thereon. [Doc. 30-27 at ¶ 6]. When tablets were introduced to NCDAC facilities, there were no set policies regarding their usage or restrictions. [Doc. 30-27 at ¶ 7]. As such, each facility created their own guidelines and policies regarding tablet privileges. [Doc. 30-27 at ¶ 8]. At Alexander, tablet usage is considered a privilege, not a right, and there is no grievance process for the revocation or restoration of tablet privileges. [Doc. 30-27 at ¶¶ 8-9]. Offenders may lose tablet privileges at the discretion of staff. [Doc. 30-24 at ¶ 32]. Tablet privileges may be revoked if the tablets are damaged, used inappropriately, or shared with others who have lost their tablet privileges. [Doc. 30-24 at ¶ 32]. There is no forecast of evidence that Defendant Poteat retaliated against Plaintiff for filing a grievance or communicated with other prison officials to retaliate against Plaintiff. [Doc. 30-27 at ¶ 11].

Likewise, Defendant Morrison was not aware of the lawsuit Plaintiff filed as a result of an alleged May 6, 2021 incident or of any of Plaintiff's issues or grievances. [Doc. 30-28 at ¶¶ 7, 23]. Defendant Morrison has had no communication with Defendant Biecker or anyone else at Alexander regarding Plaintiff. Defendant Morrison works in the intelligence office there, which is "behind the scenes and separate." [Doc. 30-28 at ¶ 22]. Once Defendant Morrison turned his witness statement over to Sergeant Poarch, he had no further involvement in Plaintiff's disciplinary proceedings. [Doc. 30-28 at ¶ 22]. Defendant Morrison was not involved in any restriction of Plaintiff's tablet privileges. There is no forecast of evidence that he retaliated against Plaintiff in any way. [Doc. 30-28 at ¶¶ 25-26].

There is also no forecast of evidence that Defendant Biecker retaliated against Plaintiff for filing a grievance or lawsuit or conspired with anyone to retaliate against Plaintiff. [Doc. 30-25 at ¶ 22]. Defendant Duncan has no recollection of the Plaintiff, no direct knowledge of Plaintiff's allegations, and no knowledge of any previous lawsuits filed Plaintiff. [Doc. 30-26 at ¶¶ 6-8]. Defendant Duncan had no part in Plaintiff's disciplinary process. There is no forecast of evidence that he retaliated against Plaintiff for filing a grievance. [Doc. 30-26 at ¶ 21].

Defendant Huneycutt was not aware of lawsuit Plaintiff filed as a result

of an alleged May 6, 2021 incident. [Doc. 30-24 at ¶ 8]. Defendant Huneycutt has no active role in the disciplinary process, and he has little knowledge of the outcome of Plaintiff's disciplinary charges. [Doc. 30-24 at ¶ 10]. Defendant Huneycutt learned of the dismissal of Plaintiff's disciplinary charges when the Security Risk Group office called to inform him that they were dismissed because staff members did not catch the "date error." [Doc. 30-24 at ¶ 10]. Defendant Huneycutt was not aware of any alleged retaliation by officers under his supervision. [Doc. 30-24 at ¶ 34]. Defendant Huneycutt has no knowledge of Plaintiff's complaints regarding tablet privileges. There is no forecast of evidence that he retaliated against Plaintiff for filing a grievance or a lawsuit. [Doc. 30-24 at ¶¶ 35-36].

## IV. DISCUSSION

### A. Abandonment

As an initial matter, the Court will grant Defendants' motion for summary judgment because Plaintiff has abandoned his First Amendment retaliation and Fourteenth Amendment due process claims by failing to respond to Defendants' motion. A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011) (citing Mentch v. Eastern Sav. Bank, FSB, 949

F.Supp. 1236, 1246-47 (D. Md. 1997)). Summary judgment for Defendants would be granted in any event.

## B. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

"The elements of a retaliation claim are: (1) that the plaintiff engaged in protected activity; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in the conduct; and (3) that the adverse action was motivated, at least in part, by the plaintiff's protected conduct." Wade v. Ballard, No. 2:13-cv-12817, 2016 WL 3693597, at *4 (S.D.W. Va. June 16, 2016) (citing Mt. Healthy City School Dist. Bd. of Educ. V. Doyle, 429 U.S. 274 (1977)).

Moreover, to establish liability under § 1983, a plaintiff must show that the defendants "acted personally" to cause the alleged violation. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). As such, doctrine of respondeat superior does not apply in actions brought

13

under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Under Shaw v. Stroud, 13 F.3d 791 (4th Cir. 1994), however, supervisory liability may attach under § 1983 if a plaintiff can establish three elements: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) and "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw, 13 F.3d at 799 (citations omitted).

While Plaintiff alleged in his Complaint that Defendants retaliated against him for filing a lawsuit regarding an alleged May 6, 2021 assault by an Alexander prison official and for filing grievances regarding his tablet privileges and that Defendant Huneycutt was aware of such retaliation and did nothing, Plaintiff has presented no forecast of evidence of such retaliation or of Defendant Huneycutt's failure to act. Because there is no forecast of evidence from which a reasonable jury could conclude that Defendants retaliated against Plaintiff in violation of the First Amendment, the Court

would grant Defendants' motion for summary judgment even if Plaintiff had not abandoned this claim.

## C. Due Process

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).

Prison disciplinary proceedings are not part of a criminal prosecution and the full array of rights due a defendant in such proceedings does not apply. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Morrissey

15

Case 5:22-cv-00149-MR   Document 32   Filed 04/29/24   Page 15 of 17

v. Brewer, 408 U.S. 471, 488 (1972)). Where a prison disciplinary hearing may result in loss of good time credits or solitary confinement, an inmate is entitled to certain due process protections. These include: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 564-71. There is no constitutional right, however, to confront and cross-examine witnesses or to retain and be appointed counsel. See Baxter v. Palmigiano, 425 U.S. 308, 322 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). If the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. See Baxter, 425 U.S. at 323 n.5. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based on "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Plaintiff alleged in his Complaint that Defendant Laws violated his due process rights relative to the conduct of Plaintiff's disciplinary hearing and that Defendant Huneycutt was aware of this constitutional violation and failed to act. Plaintiff, however, has presented no forecast of evidence here that

Defendant Laws or Defendant Huneycutt violated his Fourteenth Amendment due process rights. Because there is no forecast of evidence from which a reasonable jury could conclude that Plaintiff's due process rights were violated, the Court would also grant these Defendants' motion for summary judgment on this claim even if Plaintiff had not abandoned it.

For the reasons stated herein, the Court will grant Defendants' motion for summary judgment.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 28] is **GRANTED**, and this action is hereby **DISMISSED with prejudice**.

The Clerk is respectfully instructed to update the docket in this matter to reflect the true full name of Defendant FNU Morrison as Troy A. Morrison and Defendant FNU Poteat as Kenneth Poteat.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: April 29, 2024

*[Signature]*
Martin Reidinger
Chief United States District Judge